Filed 8/25/16  P. v. Johnson CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>RICKEY NELSON JOHNSON,<br><br>Defendant and Appellant. | F069414<br><br>(Super. Ct. No. BF144319A)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Kern County.  Kenneth C. Twisselman II, Judge.

James Bisnow, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Lewis A. Martinez and Amanda D. Cary, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

## INTRODUCTION

A jury convicted appellant Rickey Nelson Johnson of attempted murder (Pen. Code, §§ 664/187, subd. (a)[1]; count 1) and assault with a firearm (§ 245, subd. (a)(2); count 3), finding true the attempted murder was premeditated and deliberated (§ 189), he discharged and personally used a firearm during the attempted murder (§ 12022.53, subd. (c)), and he used a firearm during the assault (§ 12022.5, subd. (a)). Regarding an alleged second victim, he was found not guilty of attempted murder (§§ 664/187, subd. (a); count 2) and assault with a firearm (§ 245, subd. (a)(2); count 4).

Appellant admitted he committed the offenses in counts 1 and 3 for benefit of, at the direction of, or in association with a criminal street gang (§ 186.22, subd. (b)(1)). The trial court found true a prior serious felony conviction (§ 667, subd. (a)). He received an aggregate sentence of life in prison with a minimum parole eligibility of 14 years, plus 25 years.

On appeal, he contends the trial court erred in admitting certain evidence, the prosecution presented insufficient evidence to support the convictions, and the court erred in responding to a question which the jury posed during deliberations. We affirm.

## FACTUAL BACKGROUND

On the evening of September 19, 2012, a physical altercation occurred in Camino Real, a Bakersfield restaurant and nightclub. The altercation began as an argument involving approximately six people, which escalated into a brief fist fight where Kyle McGuire was attacked by two men. The owner of the restaurant, Alejandro Ocampo, witnessed the altercation. All of the men involved in the altercation were African-American.

---

[1] All future statutory references are to the Penal Code unless otherwise noted.

Security intervened and ejected both parties from the premises.  A few minutes later, gunshots were fired outside the restaurant, and McGuire sustained a gunshot wound to his right forearm around his elbow.  McGuire did not testify at trial.

Approximately 140 to 170 people were in the restaurant that night.  Law enforcement asked Ocampo to provide video from the restaurant's security system regarding the night of the shooting.  He located all video that involved McGuire that night, both interior and exterior shots, which he recorded.  In addition to that video, Ocampo provided images taken from the restaurant's scanner, which was used to swipe customers' identification to confirm their ages.  The jury viewed the surveillance video which Ocampo prepared.  In the video, appellant is wearing a polo shirt with numerous multicolored horizontal stripes.

Through Ocampo's testimony, the prosecution introduced People's exhibit 23 into evidence, which showed appellant's scanned identification when he entered the restaurant.  Ocampo explained how his staff used the scanner to confirm patrons' ages, and he noted the time and date stamps on the scanner were incorrect, with the date a week off from the actual date of the shooting.  He testified that appellant's identification was from the night of the shooting because the data on the scanner only lasted "a day or two" and he correlated the scanner's information with the video surveillance system.  He said it was not possible for the scanner to store information for a week.

A security officer at the restaurant, Ryan Reneau, saw two African-American males exit the front door of the restaurant and run away.  Their actions looked suspicious as if they were going to retrieve a weapon after being ejected.  Reneau then heard gunshots and he saw McGuire bleeding.  Reneau saw the shooter, who was pointing a gun at McGuire and firing.  Reneau heard shots whizzing past him, and a fellow security

3.

guard fired back once with his own gun.[2] The shooter ran away and Reneau saw the shooter leave with his male companion in a vehicle driven by a female. Reneau said the shooter was wearing a collared polo shirt with stripes.

On the night of the incident, Reneau informed law enforcement that the shooter was a black male, 25 to 30 years old, around five feet 10 inches to five feet 11 inches tall, and weighing 160 to 170 pounds. He said the shooter wore a collared shirt with horizontal stripes. That night, police showed Reneau photo lineups, which included appellant's image, but Reneau could not identify anyone.

Bakersfield police officers located eight shell casings along the east side of the restaurant. Seven were .45-caliber and one was .40-caliber. Approximately 11 days after the shooting, a detective interviewed appellant at the police station. An audio recording of the interview was created, which was played for the jury. Early in the interview, the officer informed appellant he was the prime suspect regarding the shooting. Appellant was told video existed which showed him on the side of the restaurant firing at McGuire. Appellant denied any involvement in the shooting, but admitted being at the restaurant and being involved in a fight at the bar. When asked what he was wearing that night, he said a white T-shirt without stripes.

At trial, Reneau told the jury the shooter was a black male with a striped polo shirt colored blue, white, gray and black. He said the shooter was six feet, four or five inches in height and 215 to 220 pounds in weight. Reneau watched a video clip depicting two young African-American men running from the restaurant. He told the jury the first man was the shooter.

Reneau told the prosecutor he would be able to recognize the shooter in court. The prosecutor asked for everyone in the court to stand. After a defense objection and a

---

**2** The security guard who fired back was Eric Gonzalez, who was the other named victim in the information. Gonzalez received a subpoena to testify, but he failed to appear in the trial.

sidebar, the court instructed everyone at counsel's table to stand and remove their glasses. Reneau identified appellant as the shooter and confirmed that appellant was not wearing glasses on the night in question.

According to the probation officer's report, appellant is six feet tall and weighs 187 pounds. On cross-examination, Reneau admitted that only one African-American male (appellant) was at defense counsel's table when he identified appellant in court. Reneau confirmed he said the shooter was six feet, four or five inches tall, and weighed 215 to 220 pounds. Defense counsel had appellant stand and Reneau was asked if appellant appeared to be six feet five inches tall. Reneau said appellant did appear to be that tall, and he later told defense counsel he was confident both the shooter and appellant were that tall.

On redirect examination, Reneau said he remembered giving a description of the shooter to law enforcement on the night of the incident, but he could not recall describing a shorter shooter. He said it was hard to identify the shooter from photographs on the night of the incident because of adrenaline and he wanted more time at the scene to view the photo lineups.

## DISCUSSION

### I. The Trial Court Did Not Err In Admitting The Scanner Evidence And Any Presumed Error Was Harmless.

Appellant argues the trial court prejudicially erred in failing to exclude evidence from the restaurant's identification scanner.

#### A. Background.

Before trial, the defense moved to exclude evidence of any scanned identification from the restaurant as hearsay, and lacking authentication. After hearing argument from both counsel, the trial court denied the objection, determining the information from the scanner was not hearsay and the prosecution could offer the evidence subject to cross-examination.

5.

After Ocampo completed his trial testimony, defense counsel moved for a mistrial, or, in the alternative, to exclude the evidence with an admonishment to the jury. The defense contended the scanner was inaccurate regarding the date and time, which was contrary to the prosecutor's offer of proof that it was accurate. The prosecutor countered that the scanner was accurate because Ocampo knew which patrons were present that night, which he corroborated with the data in the scanner. Further, the scanner could not hold data for a week's time.

The trial court denied both the request for mistrial and to strike the evidence. It determined that adequate foundation had been laid regarding the scanner, which operated properly. The court concluded the inaccurate date and time went to the evidence's weight and not its admissibility.

### B. Standard of review.

An abuse of discretion standard is used to review a trial court's ruling on the admission or exclusion of evidence. (*People v. DeHoyos* (2013) 57 Cal.4th 79, 131.) To determine prejudice, we ask whether it is reasonably probable the jury would have reached a more favorable verdict in the absence of the evidentiary error. (*Ibid.*)

### C. Analysis.

Appellant contends Ocampo failed to provide sufficient foundation for People's exhibit 23 because the date and time stamps were incorrect. He argues Ocampo had no expertise regarding how the scanner functioned, he did not explain how the scanner worked or why it produced an incorrect date and time if it was working properly. Appellant asserts the trial court should have required the prosecution to produce a person familiar with the scanning device to lay foundation, or to require Ocampo (or another witness) to explain the discrepancies. We disagree.

The hearsay rule does not involve information generated from a machine because that is not a "statement" from a person under the Evidence Code. (*People v. Hawkins* (2002) 98 Cal.App.4th 1428, 1449.) The test for admissibility of machine created

information is whether the computer was operating properly at the time of the printout. (*Id.* at pp. 1449-1450.) The admissibility of computer records also does not require establishing the accuracy, maintenance, reliability or the acceptability of the computer's hardware or software. (*People v. Martinez* (2000) 22 Cal.4th 106, 132.) Our Supreme Court has noted that mistakes can occur with computer generated information. However, such mistakes should not affect admissibility but be developed on cross-examination. (*Ibid.*)

Here, Ocampo testified he was present on the night of the shooting and he observed the patrons. He explained how his staff used the scanner. He said the scanner's information was from the night of the shooting because its data only lasted "a day or two" and he correlated the scanner with the video surveillance system. It was not possible for the scanner to store a week's worth of information. This was sufficient foundation to authenticate the information which the scanner produced. The discrepancies regarding the date and time did not affect admissibility but went to the weight of this evidence. The trial court did not abuse its discretion.

Further, even if error occurred, it was harmless. Appellant admitted to law enforcement he was present at the restaurant on the night of the shooting. The jury was able to see appellant in the courtroom and view him in the video surveillance footage. It is not reasonably probable the jury would have reached a more favorable verdict even if error occurred regarding appellant's scanned identification. Accordingly, we reject this claim of error.

## II.     The Prosecution Introduced Sufficient Evidence.

Appellant contends the prosecution presented constitutionally insufficient evidence to prove he shot McGuire.

### A.     Standard of review.

We review the entire record in the light most favorable to the judgment to determine the sufficiency of the evidence to support a conviction. (*People v. Casares*

7.

(2016) 62 Cal.4th 808, 823.) We must determine if the entire record contains substantial evidence from which any reasonable jury could have found the essential elements of the crime and determined appellant was guilty beyond a reasonable doubt. To be substantial, such evidence must be reasonable, credible and of solid value. The same standard of review is used for cases in which the prosecution principally relied upon circumstantial evidence. It is the jury and not the reviewing court that weighs the evidence and resolves conflicting inferences. (*Ibid.*)

On appeal, we neither reweigh the evidence nor reevaluate a witness's credibility. (*People v. Livingston* (2012) 53 Cal.4th 1145, 1170.) We will not reverse a judgment just because the circumstances might also reasonably be reconciled with a contrary finding if the circumstances reasonably justify the jury's findings. (*Ibid.*) "Thus, if the verdict is supported by substantial evidence, this court must accord due deference to the trier of fact and not substitute its evaluation of a witness's credibility for that of the fact-finder. [Citations.]" (*People v. Barnes* (1986) 42 Cal.3d 284, 303-304.)

**B.     Analysis.**

Appellant questions the validity of the video, arguing it was not prepared by a police criminalist but rather the restaurant's owner, it shows far less than the approximate 140 people who were there that night, and while the camera shows the shooter wearing a striped shirt, the shooter's face is turned away. He asserts it is impossible for a rational juror to compare the shirts of all the men present at the restaurant that night. He argues no rational juror could find Reneau's courtroom identification credible because Reneau said the shooter was much taller and heavier, and appellant was the only African-American at defense counsel's table. He contends no rational trier of fact could believe beyond a reasonable doubt that he shot McGuire. These arguments are unpersuasive.

Although a police criminalist did not prepare the video, Ocampo testified he located images based on his personal recollection of the events that night. Based on both the restaurant's surveillance system and his admissions to police, appellant was present at

8.

the restaurant on the night of the shooting and he was involved in the bar fight with McGuire. When told he was the prime suspect in McGuire's shooting and he was seen on video firing a gun, appellant claimed to have worn a white T-shirt that night. The video shows otherwise.

Appellant wore a long, baggy polo shirt with horizontal stripes when he entered the restaurant. He wore the same shirt when he was ejected, and when he jogged from the restaurant into the parking lot just before the shooting.

During the trial, the jury was able to view appellant and compare him to the shooter's general image in the video. We have reviewed the video evidence. Appellant's body type and athletic build are identical to the shooter's. The shooter and appellant wore similar clothing, including the same shirt. The video alone is compelling evidence that appellant was the shooter.

During closing arguments, defense counsel contended Reneau's testimony was questionable because he was unable to identify appellant in the photo lineup on the night of the shooting, he made a mistake at trial regarding appellant's height and weight, and appellant was the only African-American standing at counsel's table when Reneau's identification occurred. It is difficult to know what weight, if any, the jury attributed to Reneau's in-court identification. It is clear, however, the jury believed appellant was the shooter despite Reneau's mistakes. To the extent the jury gave Reneau's identification any weight, we will accord due deference to the jury and not substitute its evaluation of Reneau's credibility for our own. The jury heard that Reneau saw the shooter and they heard he provided law enforcement with a description of the shooter that night that generally matched appellant's actual height and weight. Reneau was confident appellant was the shooter. During a video clip depicting two men running from the restaurant, Reneau said the first man was the shooter. We have reviewed this clip and appellant is the first man.

9.

Based on a review of the entire record in the light most favorable to the judgment, sufficient evidence exists to support this conviction. The circumstances reasonably justify the jury's findings. A reasonable jury could have found the essential elements of the crime and determined appellant was guilty beyond a reasonable doubt. This evidence was reasonable, credible and of solid value. Accordingly, appellant's convictions will not be reversed.

## III. The Trial Court Did Not Err In Responding To The Jury's Notes.

Appellant asserts the trial court prejudicially erred when it failed to instruct the jury pursuant to CALJIC No. 8.73 after the jury submitted two notes to the judge.

### A. Background.

The trial court instructed the jurors, in part, with CALJIC No. 8.67, informing them count 1 (involving McGuire) and count 2 (involving Gonzalez) alleged willful, deliberate, and premeditated attempted murders. Those terms were defined for the jury. With this instruction, the jury was also told an attempt to commit willful, deliberate, and premeditated murder exists if it "was preceded and accompanied by a clear, deliberate intent to kill which was the result of deliberation and premeditation so that it must have been formed upon preexisting reflection and not under a sudden heat of passion or other condition precluding the idea of deliberation[.]"

During deliberations, the jury sent two notes to the judge. The first asked for "more explanation" regarding CALJIC No. 8.67. After meeting with counsel, the judge met with the jurors in open court, saying he wished to assist them but they needed to be more specific regarding the inquiry. The judge asked the jury to prepare a second note. The second note asked the judge to define the meaning of "other condition" as it relates to premeditation, and they asked for examples of "other conditions."

The court met with counsel and fashioned a response. Defense counsel asked the court to reread all instructions and not give any emphasis on any terms from a specific instruction. In the alternative, the defense asked the court to reread CALJIC Nos. 2.01,

10.

2.90 and 8.67. The defense expressed a concern the jurors might conclude "heat of passion" represented the only example of a mental state to preclude deliberation.

The court met with the jurors in open court and declined to give hypothetical fact examples of what "other conditions" might include. Instead, the court suggested the jurors reread all of CALJIC No. 8.67, "which does give further definitions and examples of what is willful, deliberate, and premeditated attempted murder and what is not." The jury was asked to consider all the other instructions. The court invited the jurors to submit an additional note should they have further questions. The jury was sent back for continued deliberations.

### B. Standard of review.

An abuse of discretion standard is used to review a trial court's decision to instruct or not instruct a deliberating jury. (*People v. Waidla* (2000) 22 Cal.4th 690, 745-746.) Under this standard, the trial court's decision "must not be disturbed on appeal *except* on a showing that the court exercised its discretion in an arbitrary, capricious or patently absurd manner that resulted in a manifest miscarriage of justice. [Citations.]" (*People v. Jordan* (1986) 42 Cal.3d 308, 316, italics original.)

### C. Analysis.

Appellant contends the jurors' question suggests they were focused not on the shooter's identity but whether appellant had deliberated and premeditated his actions. He argues the trial court should have instructed the jurors to consider provocation as another condition, and simply telling them to reread CALJIC No. 8.67 suggested that no "other condition" existed. He maintains the court should have instructed the jury with CALJIC No. 8.73, as it informs the jury to consider what effect any provocation may have had on deliberation or premeditation. He concedes the trial court had no sua sponte duty to instruct initially with CALJIC No. 8.73 as that is a pinpoint instruction, and the defense presented a theory that appellant did not commit this crime. However, he asserts he was prejudiced by the court's subsequent failure to provide CALJIC No. 8.73 because the

11.

fight occurred minutes before the shooting, and this instruction would have raised reasonable doubt regarding whether the attempted killing was planned.

As an initial matter, the parties dispute whether appellant has forfeited this issue on appeal. We need not resolve that dispute because, even when we presume no forfeiture occurred, appellant's claim fails on the merits.

A deliberating jury may seek further clarification on any point of law arising in the case. (§ 1138.) A trial court has a duty to provide the jury with the requested information, and it maintains discretion to determine what additional explanations are sufficient when the original instructions are full and complete. (*People v. Smithey* (1999) 20 Cal.4th 936, 985.) A trial court is not required to always elaborate on the standard instructions, and doing so is often risky. (*People v. Beardslee* (1991) 53 Cal.3d 68, 97.) However, a trial court cannot "figuratively throw up its hands and tell the jury it cannot help. It must at least *consider* how it can best aid the jury. It should decide as to each jury question whether further explanation is desirable, or whether it should merely reiterate the instructions already given." (*Ibid.*) " 'When a question shows the jury has focused on a particular issue, or is leaning in a certain direction, the court must not appear to be an advocate, either endorsing or redirecting the jury's inclination.' [Citation.]" (*People v. Montero* (2007) 155 Cal.App.4th 1170, 1180.)

Here, the court met with both attorneys to fashion a response, and the court considered how to best aid the jury. The trial court properly avoided appearing as an advocate, either endorsing or focusing the jury's attention in a particular direction. The instructions provided to the jury regarding premeditation and deliberation were full and complete, a point which appellant does not challenge on appeal. In suggesting the jury reread CALJIC No. 8.67, the court did not figuratively throw up its hands and tell the jury it could not help. To the contrary, the court invited the jury to submit an additional note if it continued to have questions, but the jury did not do so.

This record does not demonstrate that the court exercised its discretion in an arbitrary, capricious or patently absurd manner.  Accordingly, it cannot be said that the trial court abused its discretion.

## **DISPOSITION**

The judgment is affirmed.

_____

LEVY, Acting P.J.

WE CONCUR:


_____

KANE, J.


_____

POOCHIGIAN, J.

13.